**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000875
22-JUL-2013
09:42 AM**

NO. CAAP-12-0000875

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

IN THE INTEREST OF D.K.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 11-00117)

SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding Judge, Fujise and Leonard, JJ.)

Appellant Mother (**Mother**) and Cross-Appellant Father
(**Father**) appeal from the Order Terminating Parental Rights, filed
on October 18, 2012 in the Family Court of the First Circuit
(**Family Court**).[1]

On appeal, Mother challenges Findings of Fact 29, 47,
50, 51, 52, 57, 62, 63, 65, 66, 67, 70, 72, 77, and 78 and
Conclusions of Law 3, 4, 5, and 6.  Mother points to conflicting
testimony of several witnesses but provides no specific argument
as to why each challenged Finding of Fact is clearly erroneous
and/or each Conclusion of Law is wrong.  Instead, Mother contends
that there was no clear and convincing evidence that Mother was
not presently willing and able to provide her child, D.K., with a
safe family home and that it was not reasonably foreseeable that
Mother would become willing and able to provide D.K. with a safe
family home within a reasonable period of time.

---

[1]    The Honorable Matthew J. Viola presided.

On cross-appeal, Father challenges Findings of Fact 22, 29, 31, 98, 99, 101, 102, 103, 112, 113, 115, 116, 120, and 122, and Conclusions of Law 1, 2, and 3. Father does not provide any specific argument as to why each challenged Finding of Fact is clearly erroneous and/or each Conclusion of Law is wrong. Instead, Father contends that (1) Petitioner-Appellee State of Hawaii, Department of Human Services (DHS), failed to provide Father with a reasonable opportunity to reunify with D.K. by filing a motion to terminate his parental rights less than seven months after D.K.'s entry into foster custody, (2) the Family Court erred by allowing Dr. Brenda Wong (**Dr. Wong**) to testify about the risk of potential exposure to abuse and neglect upon D.K., and (3) the Family Court erred by finding that Father was not presently willing and able to provide D.K. with a safe family home and that it was not reasonably foreseeable that Father would become willing and able to provide D.K. with a safe family home within a reasonable period of time.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's and Father's points of error as follows:

(1) Contrary to Mother's claim, there was clear and convincing evidence that Mother was not presently willing and able to provide D.K. with a safe family home, even with the assistance of a service plan and that it was not reasonably foreseeable that Mother would become willing and able to provide D.K. with a safe family home within a reasonable period of time.

Mother's therapist, Dr. Armsby, stated that when he last saw Mother, she had made minimal progress in her individual therapy, her prognosis was poor, and she was not motivated, and she did not have a grasp on her mental health issues. Dr. Armsby also stated that if Mother resumed using "Ice" then it would affect her parenting ability.

2

Dr. Wong is a clinical psychologist that conducted a psychological evaluation of Mother. She testified that Mother presented contradictory information, minimized her actions, and used substances as a coping mechanism. Dr. Wong stated that there were concerns about an abusive relationship with Father, Mother did not feel that she needed to learn new skills, which is contrary to her history of inability and neglect of her children's needs, Mother felt that there was little impact of domestic violence on the children, which showed a lack of good perception of a child's emotional health needs, her prognosis would be poor unless Mother changed her poor insight or minimization, and Mother's motivation to be open was missing, which would be a requirement before any progress could be made.

Mother admitted that she used methamphetamine in August 2012, she did not finish the Queen's Medical Center Dual Diagnosis substance abuse treatment program, she missed visiting D.K. the entire month of September because her friend was giving birth and there were things that she had to do at the shelter, she did not believe she has a substance abuse problem, she did not believe she has any parenting problems, and she did not believe she needs to address any mental health issues.

Mother further testified that she did not want her children returned to her at that time because she would rather do her services first to better herself, she did not know why DHS took away her children, DHS thought she had a drug problem but she did not think she had a drug problem, she used drugs in 2009, 2011, and 2012, but did not do it everyday, it was not a concern that she had not yet completed substance abuse treatment because she went to class every Thursday, she did not feel that she could currently provide a safe family home because she was in a shelter, she did not believe it was in D.K.'s best interest to wait 2 years for her to complete services and it had already been

one year, "Ice" did not affect her judgment, and she was an addict but not a serious addict.

A DHS social worker, Wendell Omura (**Omura**) testified that in 2009, DHS believed that Mother had no insight into the concerns DHS had and at the time of the termination of parental rights hearing, Mother had not resolved any issues.

Another DHS social worker, Clarissa Noelani Realin (**Realin**) testified that Mother was given numerous referrals for substance abuse counseling but did not complete a treatment program to date, Mother completed a psychological evaluation which recommended individual therapy, but she had not attended appointments since the beginning of 2012, it was not foreseeable that Mother would become able to provide a safe home because Mother's mental health issues and substance abuse were unaddressed and Mother has parenting ability issues, and Mother tested positive for drugs on March 16, 2012 and May 10, 2012.

(2) DHS did not fail to provide Father with a reasonable opportunity to reunify with D.K. by filing a Motion to Terminate Parental Rights less than 7 months after D.K. entered foster custody. Pursuant to Hawaii Revised Statutes (HRS) § 587A-31(g), DHS must file a motion to terminate parental rights if a child has been in foster care for a total of 12 consecutive months from the date of entry into foster care. However, "Nothing in this section shall prevent the department from filing a motion to terminate parental rights if the department determines that the criteria for terminating parental rights are present." HRS § 587A-31(h). Thus, DHS was not prohibited from filing a motion to terminate Father's parental rights less than 12 months after D.K. entered foster care. When DHS moved to terminate Father's parental rights on March 19, 2012, Father had dropped out of all court ordered services and had not shown up for drug testing since January 2012.

Father's challenge to the testimony of Dr. Wong is without merit. Dr. Wong was allowed to testify about child abuse and neglect over Father's objection. However, Dr. Wong's testimony only pertained to Mother. Therefore, even if the family court erred by allowing Dr. Wong's testimony about Mother, it was harmless as to Father.

There was clear and convincing evidence that Father was not presently willing and able to provide D.K. with a safe family home, even with the assistance of a service plan, and that it was not reasonably foreseeable that Father would become willing and able to provide D.K. with a safe family home within a reasonable period of time. Father admitted that he had not completed substance abuse counseling, he tested positive or failed to show up for testing and understood that those are considered positive, he did not complete a psychological evaluation because he has not been clean for 60 days, he understood that he did not complete his services so the concerns that DHS had still existed, it was a year and a half before he decided to attempt to complete services, and he used meth once on March 5, 2012.

Omura stated that Father had unresolved mental health and anger issues and untreated substance abuse and that Father was not able to provide a safe family home because he had not undergone individual therapy and could not sustain services.

Realin testified that it was not foreseeable that Father would become able to provide a safe home because Father had a substance abuse issue, Father should not be given more time to reunify with D.K. because of his relationship with Mother and he did not understand that her deficiencies caused her to be unsafe and Father felt that both of them together could provide a safe home, after Father finished domestic violence class he was referred to drug treatment but did not follow through, in order for Father to provide a safe family home, he would need to participate in treatment, maintain a regular sponsor, attend

regular AA/NA meetings, reside in a clean and sober house, and regularly attend treatment with a therapist, and a reasonable period of time would be 24 months, or only 9 more months at the time of the termination of parental rights hearing and it did not appear that Father could accomplish all of that given his history.

For these reasons, the Family Court's October 18, 2012 Order Terminating Parental Rights is affirmed.

DATED:   Honolulu, Hawai'i, July 22, 2013.

On the briefs:

Tae Chin Kim
for Father/Cross-Appellant

Randal I. Shintani
for Mother-Appellant

Mary Anne Magnier
Jonathan M. Fujiyama
Deputy Attorneys General
for Petitioner-Appellee

Presiding Judge

Associate Judge

Associate Judge